MARIE IVERSON v. ANDREW QUAM AND OTHERS.[1]

May 21, 1948.

No. 34,478.

---

[1]Reported in 32 N. W. (2d) 596.

*Swore & Wallace,* for appellant.

*Dell & Rosengren* and *Ralph S. Thornton,* for Andrew Quam, respondent.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries sustained by plaintiff on January 10, 1946, shortly after 6 p. m., by reason of a fall down an unlighted basement stairway in a building owned by defendant Andrew Quam, part of which was then under lease to the remaining defendants for restaurant purposes.

Plaintiff's action was founded upon defendants' alleged common-law negligence in failing properly to light such stairway and, in addition, upon their alleged failure to light such stairway as required by M. S. A. 157.05, subd. 1. At the close of plaintiff's testimony, the trial court granted defendants' motion for a directed verdict, stating to the jury as the reasons therefor that:

"* * * There is a statute in this state that requires that all restaurants and rest rooms be properly lighted, equipped with plumbing and ventilated, and the Supreme Court of the state has held in many cases that where the light facilities are there, leaving it only for the guest to turn on the light, that is a sufficient compliance with the statute. * * * The law requires each one of us to use our senses. It requires us to look, and looking to see those things which are to be seen. We cannot close our eyes. * * * The evidence by plaintiff's witnesses, as well as by the photographs which are before us, shows that upon entering the door, before it is closed behind you, immediately in front of your face and only two and a half feet away from the door was the light switch which turned on the light to illuminate that entry-way and stairway, and it was plaintiff's duty on entering there to see that light switch. She went in and closed the door leaving herself in the dark, and then stepped out into space, fell downstairs and was injured. * * * Consequently in this case, as I see

it, there is no evidence from which you could find anything other than that plaintiff was herself guilty of contributory negligence. She was negligent in closing herself in the dark. She was negligent in failing to see the light switch and making use of it. She was negligent while in the dark in stepping off, not knowing where her feet were going to. In view of the fact that she was guilty of contributory negligence you and I have no right to say—have no right under our oaths as the triers of the fact and judge of the law to reach into the pockets of the defendants and take money from them and give it to the lady who under our law isn't entitled to recover."

Subsequently, plaintiff moved for a new trial as to defendant Quam on the ground that the trial court erred in directing a verdict in his favor. This appeal is from the order denying such motion.

The property in question, owned by Quam, is a building in Alexandria consisting of a main floor and basement. At the time of the accident he operated a pool hall and beer parlor on part of the main floor. The remainder of this floor was then under lease to defendants Sophia Bergman and Vivian Underdahl for a restaurant. From a vestibule at the front of the building separate doors led respectively to the restaurant on the left and to defendant's pool hall and beer parlor on the right. At the rear of the restaurant, which did not occupy the complete space to the back of the building, a swinging door opened into the pool hall and beer parlor, which occupied the area back of the restaurant.

In the basement of the building was located a ladies' toilet, used by patrons of the pool hall and beer parlor as well as by patrons of the restaurant. A door to the basement stairway leading to such toilet opened from the back part of the restaurant, so that to reach it from the pool hall it was necessary first to go through the swinging door into the restaurant and then through the door leading to the basement.

On the latter door the word "Ladies" was marked in large letters. No word or sign thereon indicated that the toilet was in the basement. Immediately inside this door and at the head of the stairs

leading to the basement was a small landing 2½ x 3 feet. The basement stairway just to the right of this landing was 2½ feet wide. The right edge of the landing ended at the edge of the first down step a few inches to the right of the door from the restaurant. When the door was open, some light for the stairs was provided from the restaurant lights. An electric light on the wall to the right of the doorway and over the first step was also available for light, the switch for which was located on the wall opposite the door.

Defendants Bergman and Underdahl, lessees of the restaurant, both testified that the toilet was not part of the premises leased by them, and that they had nothing to do with the cleaning or upkeep thereof. Defendant Quam admitted that he regularly cleaned and swept it, and that it was used by the customers of his pool room and beer parlor. He further admitted that he furnished the light bulb, and that he turned it on in the morning and sometimes turned it off at night. Other witnesses testified that on different occasions he turned it off during the daytime.

Plaintiff, 67 years old, employed as a domestic, was in the restaurant on the evening of the accident at about 6 p. m., for her evening meal. She was unfamiliar with the premises and had never used the stairway to the basement or the ladies' toilet therein. She was unaware that the toilet was in the basement. After ordering her meal, she looked about and observed the word "Ladies" on the door above described. Believing the ladies' toilet room was on the other side of this door, she went in, closing the door after her because of her assumption that she was then in the toilet room.

The electric light over the stairs was not then lighted, and, looking about for it, she observed it extending from the wall immediately to the right above her. On account of the darkness, however, she failed to observe the light switch on the opposite wall. Thinking the light was controlled by a string or switch attached to it, she reached up toward her right to light it. While so engaged, she fell down the basement stairs, sustaining the injuries for which this action is brought. She testified that she closed the door prior to seeking the light switch and did not reopen it for additional light

after finding herself in darkness, because she thought she was in the ladies' room; and that when she reached for the light she did not look at the floor where she was stepping because she was looking toward the light and for the switch to light it.

On appeal, these issues are presented: (1) Was there evidence indicating negligence on the part of defendant Quam proximately causing the accident; and (2) was plaintiff guilty of contributory negligence as a matter of law?

1. There is sufficient evidence to justify a finding that the platform at the top of the basement stairs, the basement stairway, and the toilet in the basement remained under the control of defendant Quam subsequent to the leasing of a portion of the property to the other defendants. His actions in taking care of the same and maintaining light therefor at the head of the stairway, as well as the use thereof by his patrons, might reasonably be held to establish that he had retained control over this part of his property. The fact that no reference thereto was made at the time of the oral lease of the restaurant to the remaining defendants appears to substantiate this conclusion.

It is well established that a landlord will be presumed to have retained control over a stairway used in common by different occupants of his property; that such control may otherwise be established by direct evidence or reasonably inferred from all the circumstances; and that when a lessor thus reserves control he is liable to tenants and others rightfully on such reserved premises for injuries occasioned by his failure to keep the same in a reasonably safe condition. Farley v. Byers, 106 Minn. 260, 118 N. W. 1023; Williams v. Dickson, 122 Minn. 49, 141 N. W. 849; Rose v. Mooers Brothers Inc. 161 Minn. 149, 201 N. W. 303; 32 Am. Jur., Landlord and Tenant, § 689.

2. If the construction of such a stairway is of such nature as to require artificial light in order to make it safe, then the obligation rests upon the landlord to see that it is adequately lighted for the protection of those rightfully using it. This rule is expressed in 32 Am. Jur., Landlord and Tenant, § 701, as follows:

"* * * However, if the construction of a stairway is such as to require artificial light, even in ordinary times, in order to make the use of the hall and stairway safe, the landlord may be held liable for negligence in failing to keep it lighted. Likewise, where the landlord assumes the duty of keeping a hall or stairway lighted, he is liable for personal injuries due to the unlighted condition of the hall, if that condition is ascribable to his negligence."

See, Annotations, 25 A. L. R. 1314, 39 A. L. R. 302, 58 A. L. R. 1419, 75 A. L. R. 166, 97 A. L. R. 232, and 3 L.R.A.(N.S.) 317; Gallagher v. Murphy, 221 Mass. 363, 108 N. E. 1081, Ann. Cas. 1917E, 594.

There was evidence from which a jury might reasonably find that the landing and the stairway extending downward immediately adjacent to the door were so constructed as to constitute a hazard to patrons using the same and that a light was required to make them reasonably safe; that the obligation to furnish such light rested upon Quam, not only because it could be found that he had reserved control over this portion of his property, but also because it could be found that, having once assumed the duty to provide such light, his obligation in this regard continued thereafter; and that his failure to carry out his obligation in this respect constituted negligence at common law, irrespective of M. S. A. 157.05, and was the proximate cause of plaintiff's injuries. See, 17 Minn. L. Rev. 819. Such evidence likewise distinguishes this case from Ryberg v. Ebnet, 218 Minn. 115, 15 N. W. (2d) 456, where the facts established that the tenant rather than the landlord had assumed the duty of providing light for a hotel stairway on property leased without reservation to such tenant.

3. Defendant Quam asserts, however, that notwithstanding this the evidence clearly establishes that plaintiff was guilty of contributory negligence as a matter of law. A number of Minnesota decisions are cited in direct support of this contention, to wit: Murray v. Albert Lea Home Inv. Co. 202 Minn. 62, 277 N. W. 424; Johnston v. Tourangeau, 193 Minn. 635, 259 N. W. 187; Plahn v. Masonic Hall Bldg. Assn. 206 Minn. 232, 288 N. W. 575; Huyink v. Hart Publica-

tions, Inc. 212 Minn. 87, 2 N. W. (2d) 552; Sartori v. Capitol City Lodge, 212 Minn. 538, 4 N. W. (2d) 339.

An examination of the authorities generally indicates that most of the cases on this issue revolve about one of three different sets of circumstances, viz.: (1) Where the injured person is familiar with the premises and there are no defects therein; (2) where there are defects in the stairway involved, known to the injured person, and he ventures to use the same when unlighted; and (3) where a stranger, with no knowledge of the premises, undertakes to use them when they are in a darkened condition. It is the last of the three situations that is here involved. In substance, the rule governing this type of case is that a person proceeding in a strange, unlighted stair or hallway, without attempting to seek a light or to take precautions which would have enabled him to proceed in safety, and who, while thus traversing such hall or stairway, meets with an accident by reason of the unlighted condition thereof, will be held guilty of contributory negligence as a matter of law. Expressed in other words, ordinarily one is not justified in going on a tour of discovery in a strange building when it is so dark that he cannot see what he is doing. See, Huyink v. Hart Publications, Inc. 212 Minn. 87, 2 N. W. (2d) 552; Sartori v. Capitol City Lodge, 212 Minn. 538, 4 N. W. (2d) 339.

It is obvious that the basis of the rules governing this class of cases rests upon the failure of the party involved to take reasonable precautions to light the unfamiliar and darkened stairs or passageway or otherwise to insure his safety while traversing the same. An examination of the Minnesota cases above cited supports this conclusion.

4. In the instant case, however, plaintiff was not proceeding forward in a dark passageway without taking precautions. Actually, she was in the act of taking such precautions at the time of her injury. Two choices for procuring additional light were open to her, (1) to reopen the door leading into the restaurant, or (2) to seek the switch for the light she observed on the wall above her to her right. Modesty caused her to choose the latter course; and, in

making this choice, as she leaned or stepped toward the switch, her mishap took place. We are not prepared to say that the choice thus made was so careless, reckless, or unreasonable as to establish plaintiff's contributory negligence as a matter of law.

This is true particularly in view of the fact that the word "Ladies" on the door was a direct invitation to plaintiff to use the premises, with her attendant right to assume that the ladies' room was on the same floor and in a reasonably safe condition for use.

The facts thus outlined are clearly distinguishable from those in the Minnesota decisions above referred to. Thus, in Murray v. Albert Lea Home Inv. Co. 202 Minn. 62, 277 N. W. 424, plaintiff, familiar with the premises involved and knowing that the elevator which he intended to use was sometimes left on a different floor, *walked blindly* into a dark elevator shaft, *without taking any precautions* in the face of obvious danger.

In Johnston v. Tourangeau, 193 Minn. 635, 259 N. W. 187, two courses were open to plaintiff, one to his knowledge safe, the other dangerous because of darkness. *Without taking any of the required precautions* to insure his safety, he proceeded into the darkened passageway at a time when he might readily have used the other.

In Plahn v. Masonic Hall Bldg. Assn. 206 Minn. 232, 288 N. W. 575, plaintiff entered an *unmarked* doorway in premises entirely unfamiliar to her, and *without further precaution* pushed forward in search of a light. No word thereon indicated that the door involved led to a toilet, and plaintiff had no reason to believe that it did. There was no invitation, direct or implied, to use the premises, and ordinary precaution required that plaintiff obtain light before proceeding therein.

In Huyink v. Hart Publications, Inc. 212 Minn. 87, 2 N. W. (2d) 552, plaintiff was held guilty of contributory negligence because of his *failure to make available ample light provided for in a basement.* Light switches at the head of the stairs thereto and two ceiling lights with strings attached *were plainly visible and could have been readily lighted by plaintiff* had he chosen to do so. He ignored them and proceeded to walk forward in the basement with a flashlight

directed *on the walls and ceiling rather than on the floor,* where ordinary care would have required that he use it. There we stated (212 Minn. 91, 2 N. W. [2d] 554):

"Venturing in the dark does not constitute contributory negligence as a matter of law in all cases. The question is whether the plaintiff thereby unreasonably exposes himself to risk of injury. In some situations, we, as well as other courts, have held that the question presents a fact issue for the jury under the particular circumstances. [Citing Jewell v. Blanchett Inv. Co. 199 Minn. 267, 271 N. W. 461.]"

In Sartori v. Capitol City Lodge, 212 Minn. 540, 4 N. W. (2d) 341, plaintiff alleged that he—

"came in contact with an open door which he believed to be the entrance to the toilet, but which was in fact the door leading to the stairway to the basement. That the light in said stairway and basement was turned off and said stairway was totally dark. That plaintiff, believing said door entered the room he was seeking, and being unaware of the existence of the doorway leading to the stairway of the basement, did enter such doorway and then and there fell with great force and violence down the stairway * * *."

There we stated (212 Minn. 541, 4 N. W. [2d] 341):

"The portions of the complaint cited speak for themselves. They compel the inference that plaintiff was entirely unfamiliar with the surroundings. Thus the question presented is whether, * * * plaintiff can recover for injuries sustained in a fall *when he entered a dark, unfamiliar passage,* while seeking a toilet, and from it stepped into an open, totally dark cellar doorway, thinking it to be the toilet entrance.

\* \* \* \* \*

"While on the question of contributory negligence each case must be, in a measure, determined on its own particular facts * * * oddly enough, we find that a nearly identical situation presented itself in Plahn v. Masonic Hall Bldg. Assn. 206 Minn. 232, 288 N. W. 575." (Italics supplied.)

The foregoing résumé of the Minnesota cases indicates the features which distinguish them from the case at hand. Here, as previously stated, the doorway, with the word "Ladies" thereon, was an invitation to guests of the restaurant to enter the doorway to what such guests might reasonably assume was the ladies' toilet. Plaintiff did not step into a dark, unknown passageway, but, relying on that invitation and assumption, rather stepped into what was clearly designated a ladies' toilet. She was unfamiliar with the fact that a narrow, darkened stairway extended downward immediately to the right of the entrance. There was sufficient light to enable her to see the electric light bulb extending from the wall to her right. Before proceeding further, she undertook to light her way. The fact that she had two choices, one to reopen the door, and the other to light this bulb, neither of which choices appeared to be fraught with unknown dangers, and that she chose the course which led to her mishap would not support the conclusion that as a matter of law she had failed to exercise reasonable care or was otherwise guilty of contributory negligence.

In view of the distinguishing circumstances in this case, we hold that it is not governed by the cases cited and that the question of plaintiff's contributory negligence was one of fact for the jury.

Reversed.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.